# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Chase Bass,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No.: |
| § | |
| **UniFirst Corporation** § | JURY DEMAND |
| § | |
| **Defendant.** § | |

## COMPLAINT

## INTRODUCTION

1. This is an action for redress of unlawful conduct committed by the Defendant in violation of the Americans with Disabilities Act as amended ("ADA"), 42 U.S.C. 12101, *et. seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601 *et. seq.* The Plaintiff requests a trial by jury of all issues so triable to a jury.

## JURISDICTION

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 12117 and 29 U.S.C. §2617.

3. UniFirst Corporation ("Defendant" or "UniFirst") employed the Plaintiff in Houston County, Alabama where the events or omissions giving rise to the Plaintiff's claims occurred. Therefore, venue in the Middle District of Alabama is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4. At all relevant times herein, the Plaintiff, Chase Bass (hereinafter "Plaintiff" or "Mr. Bass") has been an Alabama resident over age 19 and was an employee for purposes of, 42 U.S.C. § 12111 and 29 U.S.C. § 2617.

5. UniFirst Corporation ("UniFirst" or "Defendant") is a Delaware corporation authorized to do business in the State of Alabama and does business in Houston County, Alabama. It employs more than 50 people and is considered an employer for all purposes herein.

## ADMINISTRATIVE PREREQUISITES

6. Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission on or about April 19, 2021. The EEOC Dismissal and Notice of Rights was issued on August 5, 2022. This Complaint is filed within ninety (90) days of Plaintiff's receipt of his Notice of Rights.

## STATEMENT OF FACTS

**7**. Mr. Bass began working at UniFirst Corporation in Dothan, Alabama in January 2017 as a Sales Manager. His territory was Dothan, Alabama and Panama City Beach, Florida. His job duties included managing sales teams, hiring and training new sales representatives, leading sales calls with representatives, managing the sales force of both locations, and leading continuing education training, among other things. He was very successful at his job and braking division records every year.

8. Around July 2020, Mr. Bass began experiencing episodes of high fever, nausea, extreme fatigue, exhaustion, night sweats, stress, anxiety and depression. These episodes

would be so extreme that they substantially limited his major life activities. He began to seek medical treatment and diagnoses. This required many visits to a variety of doctors as well as extensive medical testing. Ultimately, around August 2020, he was diagnosed with Epstein - Barr virus, mononucleosis and cytomegalovirus ("CMV").

9. During this time UniFirst policy was strict that all Sales Department employees work from home, therefore Mr. Bass was able to continue to successfully complete his job duties. On the occasions where his illness did prevent him from participating in a work meeting or call, he would inform his supervisor and use sick time.

10. On or about August 6, 2020, he was admitted to the emergency room for kidney and liver failure. During his hospital stay, his supervisor the General Manager, Jason Brunson, sent him an email to schedule a meeting with him the following Monday. Mr. Bass responded that he was currently in the Emergency Room and that he would not be able to meet with Brunson on Monday. Brunson then questioned why Mr. Bass was in the Emergency Room and Mr. Bass told him that he had experienced an episode and was seeking medical treatment.

11. After Brunson found out about Mr. Bass's health conditions, there were several instances where Brunson questioned the severity and validity of the diagnoses. Brunson also required Mr. Bass to go back to working in the office Monday through Friday at one point, while every other sales employee was able to continue working from home. Mr. Bass then requested an accommodation to continue working from home as it was better for his health, not only because he was immunocompromised, and therefore at a higher risk of contracting Covid, but also for his safety as well. Mr. Brunson denied the request and required Mr. Bass to return to the office.

12. Brunson began making harassing comments such as "Chase is out "sick" today" and that he had "lingering health conditions." He would make these comments not only to Mr. Bass, but in front of other employees, using a sarcastic and mocking tone of voice. Brunson also made comments that he did not believe that Mr. Bass was actually sick.

13. At one point during a one-on-one meeting, Mr. Brunson again stated that he did not believe Mr. Bass and they had an in-depth conversation where Mr. Bass pleaded for understanding. For a short period of time, Brunson seemed to try to be more sympathetic to Mr. Bass's disability.

14. In the fall of 2020 Mr. Bass was still working and going into the field, when necessary, to complete his job duties. He experienced episodes on two separate occasions where he completely blacked out and/or fainted. Neither of these episodes were on a work day but Mr. Bass still notified all management on the next business day to make sure they were updated on his condition.

15. On or about January 28, 2021 Mr. Bass had a scheduled meeting with a new hire representative. As he was preparing to go to the meeting, he had an episode to the point where he was unconscious and missed the meeting. The Location Manager in Panama City Beach, Florida, William Wilmes, called Mr. Bass and told him that he needed to let someone know if he was not going to show up to a meeting. Mr. Bass explained to him that he cannot control when the episodes are going to occur. Later that afternoon, Mr. Bass notified Brunson and Wilmes letting them know that he would need time off for more medical testing. He had ample sick leave, vacation, and FMLA time accrued to cover this. He did not receive a response until Sunday, January 31, 2021 when Brunson sent him a text message telling him to be in the office

at 7:30 A.M. the following morning. Mr. Bass reminded Mr. Brunson that he had a large prospective client meeting in Panama City, Florida that morning at 9:00 A.M. He said that was fine and to just take the Location Manager, William Wilmes with him. Brunson said he would talk to Mr. Bass after the prospective client meeting. Mr. Brunson was aware that the prospective client meeting was the result of the relationship Mr. Bass had built with the prospective client.

16. On or about February 1, 2021, Mr. Bass lead the morning sales meeting in Panama City as normal. After the meeting, Bruson told Mr. Bass to go back to the Panama City office for a video conference meeting. During the meeting, Brunson again made comments about Mr. Bass's "lingering health issues" and questioned Mr. Bass's medical diagnoses. Brunson accused Mr. Bass of lying about his reasons for missing the appointment on the previous Thursday. Brunson then told Mr. Bass that he was being suspended pending an investigation. Mr. Bass questioned Brunson about what was being investigated and he could not give Mr. Bass an answer. At this time, Brunson forced Mr. Bass to turn over all company property.

17. On or about February 2, 2021, Mr. Bass received a call from Defendant and was told that he was being terminated. Mr. Bass asked for a reason and was not given one. Mr. Bass contacted Human Resources several times asking the reason for his termination and the alleged investigation but he was never given an answer.

18. Following Mr. Bass's termination, doctors a found a tumor in his neck near the base of his skull that had to be removed.

19. UniFirst has a progressive discipline policy that requires write ups and other disciplinary actions before termination and it did not follow this policy before terminating Mr. Bass, who had not receive any write ups or warnings before the termination.

20. This inequitable treatment caused Mr. Bass severe stress, anxiety, and depression, especially when coupled with his ongoing health concerns.

21. Mr. Bass's Epstein - Barr virus, mononucleosis, CMV, and subsequently discovered tumor affected Mr. Bass's daily activities by causing him extreme fatigue, exhaustion, and to pass out or faint on occasion. As such, his conditions qualify as disabilities under the ADA, 42 U.S.C. §12102.

22. In the 12 months prior to seeking to exercise his rights under the FMLA, Mr. Bas, worked at least 1250 hours for the Defendant and therefore was an "eligible employee" under the Family and Medical Leave Act, 29 U.S.C. §2611.

## COUNT ONE
## AMERICANS WITH DISABILITIES ACT – RETALIATION

23. Plaintiff incorporates paragraphs 1 through 22 by reference as if fully restated herein.

24. The ADA states that no person shall discriminate against any individual because the individual has opposed any act or practice made unlawful by this Act. 42 U.S.C. § 12203(a). "It shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of or on account of his or her having exercised or enjoyed…any right granted by this Act." 42 U.S.C. §12203(b).

25. Plaintiff engaged in activity protected by the ADA by requesting accommodations for his disabilities.

26. The Defendant violated 42 U.S.C. §12203(b) when it retaliated against the Plaintiff because of the protected activity, among other things, as follows:

    a) By questioning the severity and validity of Mr. Bass's diagnoses;

    b) By requiring Mr. Bass to go back to working in the office while every other sales employee was able to continue working from home;

    c) By denying Mr. Bass's requested accommodation to continue working from home and requiring Mr. Bass to return to the office.

    d) By making harassing comments in a mocking tone such as "Chase is out "sick" today," Chase has "lingering health conditions" and by questioning whether Mr. Bass was really sick, both directly to Mr. Bass and in front of other employees;

    e) By accusing Mr. Bass of lying about his health conditions;

    f) By suspending Mr. Bass pending an investigation, after Mr. Bass had notified UniFirst that would need time off for more medical testing and refusing to provide any information regarding the basis for the investigation or the allegation against him;

    g) By terminating his employment and refusing to provide any reason for the termination.

27. As the proximate result of the acts and omissions of the Defendant, the Plaintiff suffered damages including loss of past and future earnings, benefits, interest, costs and other pecuniary loss. He also has suffered from severe emotional and mental distress, anguish, humiliation, embarrassment, discomfort and anxiety.

28. Plaintiff therefore seeks relief in order to make him whole by awarding him compensatory damages for the wrong endured and punitive and/or nominal damages as determined by the jury. The Plaintiff further prays for such other relief and benefits as the

cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses and all other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violation of the Americans with Disabilities Act.

## COUNT TWO
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

29. The Plaintiff incorporates paragraphs 1 through 22 by reference as if fully restated herein.

30. The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to…discharge of employees…and other terms and conditions of employment. 42 U.S.C. §12112 (a). The term Discriminate against a qualified individual on the basis of disability includes denying employment opportunities to an employee who is an otherwise qualified individual where the denial is based on the need to make reasonable accommodation to the employee. 42 U.S.C. §12112(b)(5)(B).

31. The Defendant violated the above section of the ADA by denying Plaintiff his employment opportunity based on the need to make reasonable accommodations to the Plaintiff when it terminated his employment on February 2, 2022.

32. As the proximate result of the acts and omissions of the Defendant, the Plaintiff suffered damages including loss of past and future earnings, benefits, interest, costs and other pecuniary loss. He also has suffered from severe emotional and mental distress, anguish, humiliation, embarrassment, discomfort and anxiety.

33. Plaintiff therefore seeks relief in order to make him whole by awarding him compensatory damages for the wrong endured and punitive and/or nominal damages as determined by the jury. The Plaintiff further prays for such other relief and benefits as the cause of injustice may require, including, but not limited to, an award of costs, attorney's fees and expenses and all other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violation of the ADA.

### COUNT THREE
### AMERICANS WITH DISABILITIES ACT -
### FAILURE TO MAKE A REASONABLE ACCOMMODATION

34. Plaintiff incorporates paragraphs 1 through 22 by reference as if fully restated herein.

35. The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to…discharge of employees…and other terms and conditions of employment. 42 U.S.C. §12112 (a). "Discriminate against a qualified individual on the basis of disability" includes the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, where there is no undue hardship. 42 U.S.C. §12112(b)(5)(a); 29 CFR 1630.9.

36. At all relevant times herein, the Defendant was aware that the Plaintiff was a qualified individual with a disability and that the Plaintiff requested an accommodation to work from home temporarily and time off for medical testing because of his disability.

37. The Defendant wrongfully discriminated and retaliated against the Plaintiff in violation of the ADA by failing to reasonably accommodate his disability and by terminating his employment.

38. As the proximate result of the acts and omissions of the Defendant, the Plaintiff has suffered damages including loss of past and future earnings, benefits, interest, costs and other pecuniary loss. He has also suffered from severe emotional and mental distress, anguish, humiliation, embarrassment, discomfort and anxiety.

39. Plaintiff therefore seeks relief in order to make him whole by awarding him compensatory damages for the wrong endured and punitive and/or nominal damages as determined by the jury. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violation of the ADA.

## COUNT TWO
## FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

40. Plaintiff incorporates paragraphs 1 through 22 by reference as if fully restated herein.

41. The Congressional findings relating to the FMLA include a finding that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 USC 2601(a)(4)

42. Congress therefore stated that it is the purpose of the FMLA "to entitle employees to take reasonable leave for medical reasons…" 29 USC 2601 (b)(2)

43. Under the FMLA, an eligible employee may take up to 12 workweeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 USC 2612.

44. The FMLA prohibits interference with any rights under the Act. Specifically, an employer is prohibited from interfering with, restraining or denying the exercise (or attempt to exercise) any rights provided by the Act. 29 USC 2615; 29 CFR 825.220.

45. The Defendants violated the FMLA by subjecting Mr. Bass to a baseless investigation and subsequently terminating his employment as a means of interfering with, restraining, or denying the exercise or attempt to exercise Plaintiff's rights under the Act as prohibited by 29 CFR 825.220(a)(1).

46. As the proximate result of the foregoing acts and omissions of the Defendants, the Plaintiff has suffered damages including, but not limited to lost wages, benefits, and other compensation which was denied him by reason of the violation, together with the interest, and liquidated damages. The Plaintiff also seeks an award of attorney's fees, expert witness fees, and other costs of the action to be paid by the Defendants and all other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendants herein for all such damages allowed by law under the FMLA.

## EQUITABLE PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, in addition to the above claimed legal remedies also prays for a declaratory judgment holding that the actions of the Employer, described above, violated and continue to violate the rights of the Plaintiff as secured by the respective federal statutes and that a permanent injunction enjoining the Employer, its agents, affiliates, successors, employees, attorneys and those acting in concert with the Defendant and on the Defendant's behalf from continuing to violate such laws and for such other and equitable relief as appropriate.

Respectfully submitted this 1st day of November, 2022.

Ashton Ott (ASB-7085-E58A)
FARMERPRICE LLP
100 Adris Place
Dothan, Alabama 36303
Tel:    334/793-2424
Fax:   334/793-6624

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

Ashton Ott

**SERVE DEFENDANT AT:**

UniFirst Corporation
Prentice Hall Corporation System Inc, Registered Agent
641 South Lawrence Street
Montgomery, AL 36104